IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JOHN HENRY BARNES, JR., | ) | C/A No. 2:16-cv-2120-BHH-MGB |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| NANCY BERRYHILL, | ) | REPORT AND RECOMMENDATION |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff John Henry Barnes, Jr., through counsel, brought this action to obtain judicial review of an unfavorable final administrative decision denying benefits on his November 27, 2012, application for Disability Insurance Benefits ("DIB") and December 10, 2012, application for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). *See* Section 205(g) of the SSA, as amended, 42 U.S.C. Section 405(g). This matter was referred to the Magistrate Judge for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B). For the reasons stated herein, the undersigned recommends that this case be reversed and amended.

## Procedural History and ALJ's Findings

The Plaintiff was born March 16, 1973, and was 37 years old on the alleged onset of disability date, July 28, 2010.[1] (R. 27, 15.) The Plaintiff filed for DIB and SSI on November 27,

---

[1] The Plaintiff had previously applied for DIB and SSI. (R. 13.) Those applications were denied in a Decision by an ALJ on April 24, 2012. (*Id.*) The ALJ held that *res judicata* applied to the time period from the alleged onset date through April 24, 2012, the date of the ALJ's Decision. (*Id.*) In his brief, the Plaintiff agrees that this appeal concerns his condition from April 25, 2012, through the present. (Dkt. No. 13 at 2.)

2012 and December 10, 2012, respectively. (R. 245, 254.) The Plaintiff claimed disability due to deteriorating spine, obesity, sleep apnea, diabetes, and depression. (R. 328.)

The Plaintiff's claims were initially denied and denied on reconsideration. (R. 117-18, 149-50.) Following a hearing, the Administrative Law Judge (ALJ) denied his claim on January 28, 2015. (R. 13-23.) The Plaintiff has exhausted his administrative remedies through the Appeals Council. The ALJ's decision is now the Commissioner's final action for purposes of judicial review. In making the determination that the Plaintiff is not entitled to benefits, the Commissioner adopted the following findings of the ALJ's January 28, 2015 Decision:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> (2) The claimant has not engaged in substantial gainful activity since July 28, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> (3) The claimant has the following severe impairments: obesity, degenerative disc disease, and degenerative joint disease (20 CFR 404.1520(c) and 416.920(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
>
> (5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can only perform frequent pushing/pulling with the upper and lower extremities; no climbing ladders/scaffolds; occasional climbing stairs, balancing, stooping, kneeling, crouching, and crawling; and should have no exposure to work hazards.
>
> (6) The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> (7) The claimant was born on March 16, 1973 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).
>
> (8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416-964).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from July 28, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 13-23.)

## Applicable Law

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The Act also provides that SSI disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. *See* 42 U.S.C. § 1381 *et seq*. "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. *See* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); 42 U.S.C. § 1382c(a)(3)(A) (definition used in the SSI context).[1]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity,

---

[1] "[T]he definition of disability is the same under both DIB and SSI . . . ." *Mason v. Colvin*, No. 9:12-cv-1157-TLW-BM, 2013 WL 4042188, at *2 n.2 (D.S.C. Aug. 8, 2013) (citing *Emberlin v. Astrue*, No. 06-cv-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

(2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520 (DIB context); 20 C.F.R. § 416.920 (SSI context). If an individual is found not disabled at any step, further inquiry is unnecessary. *See* 20 C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R. § 416.920(a)(4) (SSI context); *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i). He must make a *prima facie* showing of disability by showing that he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *see also Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. *See Grant*, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert ("VE"). *Id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence

and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

*Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **Discussion**

The Plaintiff asserts the ALJ erred in the following three ways:

1. The ALJ erred by failing to give controlling weight to the opinion of the Plaintiff's treating physician.

2. The ALJ erred in failing to consider the Plaintiff's pain and its effect on his ability to concentrate and persist.

3. The ALJ erred in finding the Plaintiff's testimony less than fully credible as to the severity and extent of his symptoms.

(Dkt. No. 13 at 1.)

### 1. Weight Given to the Treating Physician's Opinion

The Plaintiff argues that the ALJ erred by not giving Dr. Lizina Green's opinion controlling weight because she was the Plaintiff's treating physician, her opinion was well-supported by medical evidence, and not inconsistent with other substantial evidence in the record. (Dkt. No. 13 at 20-24.)  The regulations direct that ALJs accord controlling weight to treating physicians' opinions that are well-supported by medically-acceptable clinical and laboratory diagnostic techniques and that are not inconsistent with the other substantial evidence of record. 20 C.F.R. § 404.1527(c)(2). If a treating source's opinion is not well-supported by medically-acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence of record, the ALJ may decline to give it controlling weight. SSR 96-2p. However, the ALJ's consideration of a treating source's opinion does not end with a finding that it is not entitled to controlling weight. The ALJ must still proceed to weigh the treating physician's opinion and all other medical opinions of record based on the factors in 20 C.F.R. § 404.1527(c). *Johnson*, 434 F.3d at 654. These factors include (1) the examining relationship between the claimant and the medical provider; (2) the treatment relationship between the claimant and the medical provider, including the length of the treatment relationship and frequency of treatment and the nature and extent of the treatment relationship; (3) the supportability of the medical provider's opinion in his or her own treatment records; (4) the consistency of the medical opinion with other evidence in the record; and (5) the specialization of the source offering the opinion. *Id.*; 20 C.F.R. § 404.1527(c).

An ALJ has a duty to provide "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record" and his explanation "must be sufficiently specific to make clear to any subsequent reviewers the weight [he] gave to

the treating source's medical opinion and the reasons for that weight." SSR 96-2p. The court should not disturb an ALJ's determination as to the weight to be assigned to a medical source opinion "absent some indication that the ALJ has dredged up 'specious inconsistencies,' *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has not given good reason for the weight afforded a particular opinion." *Craft v. Apfel*, 164 F.3d 624 (Table), 1998 WL 702296, at *2 (4th Cir. 1998) (*per curiam*).

Dr. Lizina Green is a family practitioner at Andrews Medical Center and, along with other doctors at the center, treated the Plaintiff. Medical Records indicate that Andrews Medical Center had treated the Plaintiff since at least 2009. (R. 430.) Dr. Green gave an opinion of the Plaintiff's abilities on October 29, 2014. (R. 875-878.) Dr. Green opined that the Plaintiff could occasionally lift or carry 10 pounds or less, and never frequently carry anything. (*Id.*) She stated that the Plaintiff required a hand-held assistive device for walking and would need to periodically rotate sitting and standing. (*Id.*) Dr. Green stated that the Plaintiff was limited in use of his lower extremities because of pain and numbness in the lower back. (*Id.*) Dr. Green opined that the Plaintiff could occasionally climb stairs but never climb anything else, balance, kneel, crouch, crawl, or stoop due to severe lower back pain, osteoarthritis in his knee, and the need for a cane. (*Id.*) Dr. Green stated that, due to carpel tunnel, the Plaintiff could occasionally reach, had unlimited abilities to handle, and could frequently finger and feel. (*Id.*) Dr. Green opined that the Plaintiff had no limitations with his sight, hearing, or speaking. (*Id.*) She stated that the Plaintiff could not be around vibrations because of lower back pain but had no other environmental limitations. (*Id.*)

> The ALJ gave Dr. Green's opinion little weight. (R. 20.) The ALJ found the following:
>
> Dr. Green's medical source statement is given little weight as it is inconsistent with her treatment notes and the claimant's self-reports of working. (Exhibit

C26F) Dr. Green's recent treatment records reflect generally normal musculoskeletal exams and neurological exams. (Exhibit C24F) They do not reference the use of a cane, but rather noted a normal gait. (Exhibit C24F) Dr. Green also encouraged the claimant to keep working in the treatment notes. (Exhibit C24F)

(R. 20.)

This court had reviewed Dr. Green's treatment notes from August of 2013 through September of 2014. (R. 849-860.) The notes repeatedly stated that the Plaintiff was working as a driver for a railroad and worked up to 6 days per week. (*Id.*) On September 11, 2014, the Plaintiff told his doctor he had to cut back to working 2 days per week because of pain. (R. 850.) A little over a week later however, the Plaintiff returned to Dr. Green complaining of nausea. (R. 849.) On that visit, there was no mention of his pain, and the record again indicated that he worked full time. (R. 849-860.) The Plaintiff's most recent records do not state that the Plaintiff used or required a cane.[2] They repeatedly stated that the Plaintiff's gait and stance were normal. (*Id.*)

Other objective medical evidence in the record supports the weight given by the ALJ. The Plaintiff went to the emergency room in July of 2012, and the report from his visit stated that the Plaintiff had normal motor function, normal sensation, normal deep tendon reflexes, and a steady gait (R. 563.) In February of 2013, another emergency room report noted that Plaintiff had normal motor function of his extremities and a normal gait (R. 702.) In January of 2014, an emergency room indicated that the Plaintiff had a full range of motion in all extremities, normal sensation, and no neurological deficits (R. 862). Additionally, the state agency physicians contradicted Dr. Green's opinion. (R. 99-101, 130-32.) This court finds that the weight given to Dr. Green's opinion complied with the treating physician rule and was supported by Dr. Green's

---

[2] The only reference to a cane in the medical records was in April of 2012. (R. 667.) As noted, numerous subsequent examinations covering a long period of time revealed a normal gait and stance and a full range of motion.

treatment notes and other medical evidence in the record.

### 2. The ALJ's Assessment of Plaintiff's Credibility Regarding Pain and Abilities[3]

The Plaintiff argues that the ALJ did not properly consider and weigh the Plaintiff's testimony regarding his pain and its severity. (Dkt. No. 13 at 24-29.) "The determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig v. Chater,* 76 F.3d 585, 594 (4th Cir.1996).

> First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.... It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig*, 76 F.3d at 593, 595. Factors relevant to assessing a claimant's symptoms apart from objective medical evidence include daily activities, how symptoms affect daily life, medications, and treatments. 20 C.F.R. § 404.1529(c). The court "cannot make credibility determinations," but must "review the ALJ's decisions for substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005).

The ALJ found the following regarding the Plaintiff's credibility:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. The claimant's subjective complaints and limitations appear to be overstated. There is evidence of an impairment which could reasonably be expected to cause low back pain, which his obesity likely exacerbates. However, there is no evidence suggesting a radicular component. Despite his carpal tunnel history, there is no recent evidence of upper extremity problems. The claimant testified he cannot sit for 15 minutes at a time, but he said he can drive up to 24 miles. It is likely that he is sitting for longer periods of time

---

[3] The Plaintiff's second and third arguments both relate to the ALJ"s credibility assessment of the Plaintiff. Therefore, the court reviews the arguments together.

in his current part time job.

(R. 19.)

The ALJ did not fairly summarize the Plaintiff's testimony. The Plaintiff testified that his pain medication makes his pain "tolerable," but that the medication made him drowsy. (R. 38.) The Plaintiff testified that he drives 12 miles one way for his job. (R. 39.) The ALJ stated that Plaintiff drove 24 miles, however the Plaintiff specifically testified that the 24 miles was broken up into "12 miles there, 12 mile back." (R. 38.) Therefore, it is not inconsistent that the Plaintiff would have to stop every 15 minutes for a break and to adjust because of pain.

The ALJ did not accurately summarize the Plaintiff's treatment records.[4] While the Plaintiff's treatment records do state that his pain medication is effective at times (R. 851, 854), numerous other records he was suffering from pain and wanted to see a specialist. (R. 853.) A review of his records over time indicates that the Plaintiff had ongoing pain for years during the relevant time period. Additionally and contrary to the ALJ's Decision, there is evidence of radicular pain in the Plaintiff's legs and arms. (*See e.g.* R. 850, 854.) There is also evidence in his medical records that he had to reduce his work to two days per week because of his pain and that he had numbness in his hands.

---

[4] While this court found that the ALJ properly gave little weight to Dr. Green's opinion, "little weight" does not mean "no weight." As stated in Social Security Ruling 96-2p,

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *4.

(R. 850.) On another visit in February of 2014, the Plaintiff reported radiating pain down his legs and that he was "still in a lot of pain." (R. 853.) In December of 2013, the Plaintiff went to Dr. Green with back pain and pain in his right hand. (R. 854.) The Plaintiff stated that pain medication helped the pain, but still rated the pain 7.5 out of 10. (*Id.*) Dr. Green stated that the Plaintiff's hands "showed abnormalities" and numbness. (*Id.*) The Plaintiff's medical records indicate that the pain in his back and extremities was persistent for years. This court finds that the ALJ's findings at step two of his credibility analysis of the Plaintiff were not supported by substantial evidence. The ALJ's discussion of the Plaintiff's credibility did not accurately summarize the Plaintiff's testimony or the record. Therefore, this court recommends that the Commissioner's decision be reversed and remanded.

## **Recommendation**

It is therefore **RECOMMENDED**, for the foregoing reasons, that the Commissioner's decision be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **REMANDED** for a new hearing consistent with this Report & Recommendation.

IT IS SO RECOMMENDED.


August 4, 2017

Charleston, South Carolina